Filed 11/10/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re the Marriage of MEREDITH BLAKE and JEREMIAH LANGER. | B311966 (Los Angeles County Super. Ct. No. 17STFL04444) |
| MEREDITH BLAKE, <br><br> Respondent, <br><br> v. <br><br> JEREMIAH LANGER, <br><br> Respondent; <br><br> DANIEL S. WOHL, <br><br> Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lawrence P. Riff, Judge. Affirmed.

Garner Health Law Corporation and Craig B. Garner for Appellant.

No appearance for Respondent Meredith Blake.

Stephen Temko for Respondent Jeremiah Langer.

In September 2017, Meredith Blake initiated a marital dissolution action against her estranged husband, Jeremiah Michael Langer. As that dissolution action proceeded, the family court granted Langer's motion to join as parties Blake's brother and father (Daniel Wohl and Steven Wohl, respectively)[1] for interfering with the court's ability to adjudicate the dissolution action. After Langer filed a joinder complaint against Daniel and Steven, Daniel filed a motion to disqualify Langer's attorneys. The court denied Daniel's motion, finding it to be frivolous and sanctionable.

Thereafter, Langer filed a motion for attorney fees as sanctions against Daniel pursuant to Family Code section 271 (section 271) for conduct that "frustrates the policy of the law to promote settlement of litigation and . . . to reduce the cost of litigating by encouraging cooperation between the parties and attorneys." (§ 271, subd. (a).) At the sanctions hearing, the court ruled that it would impose sanctions against Daniel for his frivolous disqualification motion but postponed its final order to allow the parties to submit additional documentation pertaining to the appropriate amount of the sanctions award. Between the initial sanctions hearing and the court's final order awarding Langer $58,400 in attorney fees, Langer voluntarily dismissed his joinder complaint against Daniel and Steven.

Daniel appeals from the postdismissal sanctions order. As his sole contention on appeal, Daniel argues that Langer's voluntary dismissal of the joinder complaint divested the trial court of jurisdiction to issue the sanctions order against Daniel. We disagree and affirm.

---

[1]	We refer to Daniel and Steven Wohl by their first names to avoid confusion. We intend no disrespect.

## BACKGROUND

The underlying facts are of limited relevance to the issue raised in this appeal. For context, we briefly recite portions of the factual and procedural background.[2]

A. *Events Preceding Langer's Request for Joinder in the Dissolution Action*

Blake and Langer married in September 2004 and separated in June 2017. In September 2017, Blake filed the underlying action for dissolution of marriage.

In January 2018, Langer's attorneys Elyse Margolin and Tess Cozine sent an email to MetLife Investors USA Insurance Company (MetLife) instructing it to maintain the named beneficiaries or covered dependents under any policy issued to Langer or Blake, including a $2 million term life insurance policy that had been taken out on Blake (the Blake policy). Langer and Daniel (Blake's brother) were the named beneficiaries of the Blake policy. Langer and Daniel had taken out the policy in 2012 in their capacity as trustees of the Meredith Blake Irrevocable Trust (the 2012 Blake trust), which was drafted by Steven (Blake's father), a trust and estate attorney in New York. The Blake policy was administered through Brighthouse Life Insurance Company (Brighthouse).

In August 2018, Steven wrote to Brighthouse and enclosed forms purportedly assigning the Blake policy to another trust created by Steven,

---

[2] We take portions of the background from our prior opinion (*In re Marriage of Meredith Blake and Jeremiah Michael Langer* (B298280, Oct. 27, 2020) [nonpub. opn.] (*Marriage of Blake & Langer*)), which comprises part of the record in this appeal. We have also granted Langer's request to take judicial notice of the appellate record in *Marriage of Blake & Langer*.

the Blake Issue Irrevocable 2018 Trust (the 2018 Blake trust), for which Steven was the trustee. In early 2019, Steven sent MetLife and Brighthouse several emails urging the assignment of the Blake policy to the 2018 Blake trust. When sending one email (which was also sent to Langer's attorneys), Steven inadvertently attached an email he had sent to Blake in November 2018 in which he stated: "I have reviewed [your residence trust] and believe I have a method of indefinitely tying your house up in litigation against [Langer], IN NEW YORK." Steven then stated, "My action may well not succeed, but it would have a very good chance of tying up your house for years—and deterring any would-be buyer who would be offput 100% from buying a house in litigation, especially in NY."

B.    *Langer's Motion for Joinder and the Joinder Complaint*

On March 13, 2019, Langer filed an ex parte request for order (RFO) in family court asking the court to grant his motion for joinder of Daniel, Steven, and the 2012 Blake trust, and requesting the court to enjoin Steven and Daniel from attempting to modify or transfer the Blake policy or transfer or interfere with the sale of the family residence. Before the hearing on his motion, Langer lodged evidence that Daniel and Steven had filed a petition in New York state court requesting various declarations and orders regarding the Blake policy, as well as seeking $10,000 in sanctions against Langer and his attorneys Margolin and Cozine, and $100,000 in punitive damages against Margolin for interfering with the property and contractual rights of the 2012 and 2018 Blake Trusts.

The family court granted Langer's original motion for joinder,[3] and on January 29, 2020, Langer filed the operative first amended joinder complaint (FAC), alleging five causes of action against Daniel and Steven for conversion; breach of fiduciary duty; wrongful use of civil proceedings; conspiracy; and ongoing conspiracy. The causes of action were based on the attempted transfer of the Blake policy, the filing of the New York lawsuit, and the attempts by Daniel and Steven to interfere with the dissolution action.

C.     *Daniel's Motion to Disqualify Langer's Attorneys*

On May 19, 2020 (one month before Blake filed her prior appeal), Daniel filed a RFO to disqualify Langer's attorneys (Margolin and Cozine) and refer them to the California State Bar for ethical violations. In substance, Daniel argued that Margolin "provok[ed] the former judge" in the dissolution action by filing pleadings that referenced Steven's email to Blake discussing a plot to thwart the sale of the family residence. Daniel argued that the email constituted privileged attorney-client material, and thus Margolin should not have submitted it to the family court.[4] In opposition, Langer argued that Steven was never Blake's attorney in the dissolution

---

[3]     In the prior appeal in this case, we affirmed the court's order granting the joinder motion. (See *Marriage of Blake & Langer, supra*, at p. *54.)

[4]     Rule 4.4 of the California Rules of Professional Conduct mandates that a lawyer must promptly notify the sender of a writing, and refrain from further examining it, whenever "it is reasonably apparent [that the] writing relat[es] to a lawyer's representation of a client [and] the writing was inadvertently sent or produced, and the lawyer knows or reasonably should know that the writing is privileged or subject to the work product doctrine."

action, and therefore his email to Blake did not constitute privileged material.

At an October 5, 2020 hearing, the court agreed with Langer and denied Daniel's motion to disqualify Langer's attorneys.

D.    *Langer's Motion for Sanctions and the Initial Hearing*

Langer filed a motion in part seeking $59,850 in sanctions against Daniel pursuant to section 271 for filing and prosecuting the frivolous disqualification motion.[5]  On January 20, 2021, the court held a hearing on the motion.  The court began by providing its tentative ruling: "With respect to the motion to disqualify, my motion [*sic*] is to grant sanctions under 271 against Daniel. . . .  [The] motion to disqualify was meritless on a variety of bases.  I told you that when I ruled on it, and I think the bringing of it is sanctionable under 271."  Following argument of counsel, the court upheld its tentative ruling "that Daniel should be sanctioned under 271."  Daniel's attorney then argued that the "incredibly high" sanctions award Langer had

---

[5]    Section 271 provides in relevant part that "the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.  An award . . . pursuant to this section is in the nature of a sanction.  In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities.  The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed."  (§ 271, subd. (a).)

Based on our review of the record, it appears that Daniel filed a 20-page "Responsive Memorandum of Points and Authorities" in response to Langer's motion for sanctions on January 6, 2021.  However, Daniel's responsive memorandum does not appear in the record on appeal.

requested was based on unsupported declarations by his attorneys; and given Daniel's own financial situation,[6] imposition of any amount of sanctions would cause him undue hardship and prejudice.

The court ordered Langer's attorneys to file billing entries reflecting time spent defending Daniel's disqualification motion, and it ordered Daniel to file an income and expense declaration and a declaration identifying any monies he had placed into trust over the past year. The parties were ordered to file these documents no later than February 11, 2021, after which the court would issue a final order.

E.      *The Voluntary Dismissal, Subsequent Hearing, and Final Order*

On January 21, 2021 (one day after the hearing on his motion for sanctions), Langer served Daniel with a copy of a request to voluntarily dismiss the FAC without prejudice. Langer filed the request for voluntary dismissal on February 5, 2021, and a clerk entered dismissal the same day.

On February 11, 2021, Langer's attorneys filed several billing entries supporting the request for sanctions. The same day, the court held a scheduled hearing on matters not relevant here. At the hearing, Daniel's attorney appeared "as an officer of the court" and informed the court of Langer's voluntary dismissal of the FAC. After summarizing the procedural history of the case, the court stated: "Now there is nothing in front of us today. No reason we have to have this debate today. But I gather there is a dispute as to whether my orders [imposing sanctions on Daniel] survive the dismissal of the [FAC]."

---

[6]      Daniel's attorney stated that "the majority of all the funds [Daniel] has have been put into trust or put away specifically for the care and maintenance" of his son, who was seriously ill and incapacitated.

7

On February 18, 2021, Daniel's attorney filed a declaration "as an Officer of the Court, in order to put the Court on notice [that Langer's dismissal of the FAC] terminat[ed] the Court's jurisdiction over Daniel." The attorney declared that "Daniel will not be voluntarily filing documents which may constitute his acquiescence to new jurisdiction by the Court."

The court issued a final order on February 22, 2021, imposing sanctions against Daniel in the amount of $58,400. The court noted that at the January 20, 2021 hearing, it had found "as a matter of fact that Daniel had violated . . . section 271 by his filing and persisting in prosecuting the plainly meritless motion to disqualify [Langer's] counsel." The court continued, "The Court was prepared to and could have made a final order that day but the Court heard from both sides assertions that the other's factual showing [as to the proper size of the award] was inadequate. . . . [¶] Although the Court found on January 20, 2021 that it had sufficient information to make the sanction order . . . the Court exercised its discretion to allow both sides to submit further information in support of their respective positions."

The court concluded that, despite the intervening dismissal of the FAC, the court retained jurisdiction to award sanctions under section 271 against Daniel. The court reasoned that while it had not found a case specifically on point relative to section 271, the case law clearly established "that a trial court retains authority to enter orders for abuse of the litigation process following a dismissal of the action."

This appeal followed.

8

## DISCUSSION

A.  *Governing Law and Standard of Review*

A plaintiff or cross-complainant has a statutory right to voluntarily dismiss, with or without prejudice, all or any part of an action or complaint before the "actual commencement of trial."  (Code Civ. Proc., § 581, subds. (b)(1), (c).)  "Upon the proper exercise of that right, a trial court would thereafter lack jurisdiction to enter further orders in the dismissed action."  (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784.)  "Accordingly, most orders entered after the dismissal are void and have no effect."  (*Pittman v. Beck Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1022 (*Pittman*); see *Paniagua v. Orange County Fire Authority* (2007) 149 Cal.App.4th 83, 89.)

"Notwithstanding this general principle, 'courts have carved out a number of exceptions to this rule in order to give meaning and effect to a former party's statutory rights.'  (*Frank Annino & Sons Construction, Inc. v. McArthur Restaurants, Inc.* (1989) 215 Cal.App.3d 353, 357 (*Frank Annino*).)"  (*Pittman, supra*, 20 Cal.App.5th at p. 1022.)  As with motions related to attorney fees and costs, trial courts retain "jurisdiction . . . postdismissal and postjudgment to decide motions for sanctions."  (*Pittman, supra*, at pp. 1022–1023, citing *Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1126 (*Day*); *Eichenbaum v. Alon* (2003) 106 Cal.App.4th 967, 976 (*Eichenbaum*); *West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 706; *Frank Annino, supra*, at pp. 358–359; see also *Manhan v. Gallagher* (2021) 62 Cal.App.5th 504, 509–510 (*Manhan*).)

In this case, the trial court imposed sanctions against Daniel under section 271 for "conduct [that] furthers or frustrates the policy of the law to promote settlement of litigation and, where possible . . . reduce the cost of

9

litigation by encouraging cooperation between the parties and attorneys."
(§ 271, subd. (a); see *ibid.* [an order imposed under § 271 "is in the nature of a
sanction"].)  An order imposing sanctions under section 271 is generally
reviewed for abuse of discretion.  (*In re Marriage of Falcone & Fyke* (2012)
203 Cal.App.4th 964, 995.)  However, when a party contends that the trial
court did not have jurisdiction or authority to make a challenged order, we
review the claim de novo.  (See *Day*, *supra*, 144 Cal.App.4th at pp. 1123–
1124.)

B.      *The Court Retained Jurisdiction to Impose Sanctions Against Daniel*

Daniel acknowledges the line of cases upholding a trial court's
retention of postdismissal jurisdiction to decide motions for sanctions and
attorney fees.  (E.g., *Eichenbaum*, *supra*, 106 Cal.App.4th 967; *Barry v. State
Bar of California* (2017) 2 Cal.5th 318.)  He contends, however, that following
dismissal, sanctions may only be imposed when "the party against whom
sanctions were forthcoming filed the dismissal."  Because here Langer
voluntarily dismissed the FAC against Daniel, and Langer was the proponent
of the sanctions motion, Daniel contends the dismissal rendered the family
court without jurisdiction to award sanctions in Langer's favor under section
271.

Contrary to Daniel's contention, postdismissal jurisdiction to award
sanctions is not confined to cases in which the plaintiff voluntarily dismissed
a complaint to avoid a defendant's sanctions motion for bringing a frivolous
complaint.  In *Day,* the court considered whether a trial court had jurisdiction
to hear a request for sanctions in a different procedural context, where the
sanctions motion was filed by the defendant after the entry of summary
judgment against the plaintiff.  The court acknowledged that "[t]he reason for

10

allowing a sanctions motion to be filed and decided after a plaintiff's voluntary dismissal is particularly strong, since a contrary rule would allow a party to 'avoid sanctions by simply dismissing the action without prejudice.' (*Frank Annino, supra*, 215 Cal.App.3d at p. 359.)" (*Day, supra*, 144 Cal.App.4th at p. 1125.) However, the court held that the "procedural distinction" between the case before it and cases involving a plaintiff's voluntary dismissal "does not affect the analysis of the jurisdictional question." (*Day, supra*, at p. 1125.)

Rather, the *Day* court held, whether a court has jurisdiction to hear a motion after a dismissal or judgment depends on whether the motion concerns a "collateral proceeding" as opposed to one directly based on the merits. (*Day, supra*, 144 Cal.App.4th at p. 1125; see *Pittman, supra*, 20 Cal.App.5th at p. 1022 ["When a postdismissal or postjudgment motion involves collateral statutory rights, then the court may retain jurisdiction to determine and enforce those rights"].) "[A] sanctions motion is a collateral proceeding that is not directly based on the merits of the underlying proceeding. This would be true whether the final resolution of the underlying matter is by voluntary dismissal or a judgment. Further, a trial court's consideration of a postjudgment sanctions request does not undermine the finality of the merits of the judgment." (*Day, supra*, at p. 1125; see *Manhan, supra*, 62 Cal.App.5th at p. 510 [imposition of statutory sanctions constitutes "a collateral issue not directly based on the merits of the underlying proceeding"].) *Day* thus concluded the trial court had jurisdiction to consider the defendant's postjudgment motion for sanctions. (*Day, supra,* at p. 1126; see also *Olcott v. Delaware Flood Co.* (10th Cir. 1996) 76 F.3d 1538, 1555 [after district court had granted defendants' motion to dismiss the action, it still had jurisdiction to impose monetary sanctions against them for discovery

11

abuses under Fed. Rules Civ. Proc., rules 16(f) and 37(b)]; *Wojan v. General Motors Corp.* (7th Cir. 1988) 851 F.2d 969, 973 [district court's authority to rule on plaintiff's sanctions motion under Fed. Rules Civ. Proc., rule 11 (Rule 11) for filing pleadings for improper purpose "is in no way diminished if and when subject matter jurisdiction is ultimately found lacking in the underlying case"].)

We conclude that the trial court in this case retained jurisdiction to impose postdismissal sanctions against Daniel under section 271. The sanctions motion was based on Daniel's frivolous motion to disqualify Langer's attorneys. Deciding whether sanctions were justified did not bear on the merits of Langer's joinder complaint filed against Daniel. Rather, the decision concerned the collateral issue whether Daniel "'has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated.'" (*Day, supra*, 144 Cal.App.4th at p. 1125, quoting *Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384, 395–396.)

Retaining jurisdiction to decide such a motion is consistent with the particular purpose of section 271, which is designed to punish "a party [who] has unreasonably increased the cost of litigation." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1227; see *Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178 [court may impose section 271 sanctions for delaying resolution of issues and "wast[ing] the court and the parties' time"].) The harm caused by Daniel's prosecution of a frivolous motion had occurred prior to the dismissal of the FAC. The voluntary dismissal of the FAC by Langer did not "rectify the harm already done by the filing of a groundless [motion or] extinguish the

court's interest in deterring and punishing the waste of judicial resources." (*Pittman, supra*, 20 Cal.App.5th at p. 1024; accord, *Cooter, supra*, 496 U.S. at p. 398 ["[T]he harm triggering Rule 11's concerns has already occurred. Therefore, a litigant who violates Rule 11 merits sanctions even after a dismissal".])

Thus, we conclude the trial court's decision to impose sanctions under section 271 fell within its inherent authority to redress abusive litigation conduct that had already taken place. The timing of Langer's voluntary dismissal did not deprive the trial court of jurisdiction to impose postdismissal sanctions against Daniel.[7]

## DISPOSITION

The trial court's order sanctioning Daniel Wohl in the amount of $58,400 is affirmed. Costs on appeal are awarded to respondent.

**CERTIFIED FOR PUBLICATION**


                                                    STONE, J.[*]
We concur:


MANELLA, P. J.                          COLLINS, J.

---

[7]     In light of our conclusion, we need not consider the alternative arguments Langer has raised in favor of affirmance, including his contention that Daniel remained joined as a party in the dissolution action following Langer's dismissal of the FAC.

[*]Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.